HIXSON *v.* PARKER.

5-1362                                          307 S. W. 2d 210

Opinion delivered December 2, 1957.

*Ray Blair* and *Robert J. White,* for appellant.

*J. H. Evans,* for appellee.

ED. F. MCFADDIN, Associate Justice. The question to be decided is whether the appellants established that they were prevented from mining coal in the year 1954 because of a strike or boycott.

In March 1948 appellee, A. C. Parker, leased 351 acres to the appellants, Hixson, et al., for coal mining. We refer to the mine on this land as the Parker mine. The lease provided that the Lessees (Hixson, et al.) would pay Lessor (Parker) a royalty on each ton of coal mined; and the lease guaranteed Parker a minimum royalty of $2,400 per year. The Hixsons failed to pay Parker any royalty in 1954, and he filed this suit[1] for $2,400 for minimum royalty. The Hixsons admitted the execution of the lease and the failure to pay the $2,400 minimum royalty for 1954; but they claimed they were prevented from operating the mine because of a strike by the coal

---

[1] The complaint also sought equitable relief and no objection is raised on this appeal as to the chancery jurisdiction.

miners; and the Hixsons relied on the following language in the lease to excuse them from paying the royalty, to-wit:

"It is further agreed that in the event of strikes, boycotts, acts of God or causes beyond the reasonable control of Second Parties, preventing the said Second Parties, their successors or assigns, from operating said mine for as much as three-fourths (3/4) or more of any year, the minimum royalty payment due under the terms hereof for the year in which such delay occurs, shall be reduced in the same proportion as such period of delay shall bear to the annual period."

Since the mine was not worked in any part of 1954, the Hixsons claim no minimum royalty was due. Having admitted the contract and pleaded an exclusion as the defense, the burden was, of course, on the Hixsons to bring their defense within the purview of the exclusion. *U. S. Fire Ins. Co.* v. *Universal Broadcasting Corp.*, 205 Ark. 115, 168 S. W. 2d 191; and *Gorman* v. *Lusk*, 270 Ky. 350, 109 S. W. 2d 625. The testimony shows four factors that affected the failure to continue operation:

1. The Parker mine was operating at a considerable loss for some time prior to December 17, 1953, when the Hixsons ceased operations which were not resumed in 1954.

2. The Hixsons attempted to induce eighteen of the coal miners to operate the Parker mine on a co-operative basis: that is, the Hixsons would receive a percentage of the receipts and the eighteen miners would receive their wages from the remaining receipts. The eighteen coal miners belonged to the United Mine Workers of America (hereinafter called "Union"); and the officers of the Union advised the eighteen coal miners that if they operated the mine on the co-operative basis, then such miners so operating would have to surrender their union membership because they would be classed as operators rather than as members of the labor union. When the eighteen coal miners received this in-

formation they abandoned the idea of operating the Parker mine on a co-operative basis.

3. Another factor militating against resumption of mining operations was the fact that the Hixsons had signed a contract with the Union, agreeing to pay a certain amount to the Welfare and Pension Fund of the Union. When the Hixsons shut down the Parker mine in December 1953, there was an arrearage of $1,463 in these payments. The Union officials were insisting that the arrearage be paid; and the Hixsons were either unable or unwilling to make the payments; and negotiations about this continued without solution.

4. A further factor militating against the resumption of operations at the Parker mine was the fact that the Union contract, governing the working by the coal miners, required that they be paid a vacation bonus; and in 1954 the coal miners filed action against the Hixsons for the vacation bonus. That case was never brought to trial and was still pending at the time of the trial of the suit from which comes this appeal.

Because of the matters mentioned in paragraphs numbered 2, 3, and 4 above, the Hixsons claim that they were prevented by a strike or boycott from operating the Parker mine in all of 1954. The language in the exclusion clause refers to "strikes, boycotts, acts of God or causes beyond the reasonable control" of the Hixsons. The Hixsons relied solely on the strike and boycott language. There is no claim that there was any act of God or other act beyond the control of the Hixsons so as to claim the benefit of the exclusion clause; so the issue was whether operations at the Parker mine were prevented solely because of a strike or boycott.

After hearing the evidence the learned Chancellor entered a decree for the plaintiff, Parker, and against the Hixsons; and in his written opinion the Chancellor said:

"The burden of proof is on the Hixsons to prove that they bring themselves within the language of the exclusion. The Court finds that the evidence fails to sustain that burden of proof—and on the contrary, that

the labor dispute was ever a matter within the reasonable control of the Hixsons; and that they, in the exercise of their good business judgment, determined to cease operation of the lease since operation was resulting in a loss. Even if the dispute with the Union Mine Workers was such a matter as required litigation to establish the legal rights and liabilities of the Hixsons, yet it was within their reasonable power to operate the lease insofar as it concerns their agreement with A. C. Parker, the lessor.''

We affirm the Chancery decree. There are numerous cases from other jurisdictions involving exclusion clauses similar, but not identical, to the one here involved. To list all such cases would unduly prolong this opinion; but the cases are collected in four annotations, being: ''Construction and effect of provision in mining lease excusing payment of minimum royalty,'' in L. R. A. 1917E 1078; ''Construction and effect of 'strike clause' of contract,'' in 35 A. L. R. 721; ''Construction and effect of 'strike clause' of contract,'' in 125 A. L. R. 1304; and ''Construction and effect of provision in mineral lease excusing payment of minimum rent or royalty,'' in 28 A. L. R. 2d 1013. See also 36 Am. Jur. ''Mines and Minerals,'' § 51, particularly the additional statements in the Cumulative Supplement. According to the majority and well reasoned holdings in the cases listed in the foregoing annotations, the rule is that a party seeking to be absolved from paying minimum royalty because of a strike or boycott has the burden of proving: (a) that the strike or boycott was the proximate cause of the failure of the party to perform the contract; and also (b) that the party seeking to be absolved was free of any wrong-doing that brought about the strike or boycott.

When we weigh the evidence in the case at bar by these two tests, it is clear that the Hixsons failed to sustain the burden of proof. Each of the four factors set out in the four numbered paragraphs above had a definite effect on the Hixsons' failure to resume operations at the Parker mine in 1954. Factor No. 1 (i. e. previous unprofitable operation) was certainly in no way con-

nected with any strike or boycott; yet that factor was of considerable importance and was the motive for the co-operative proposal to the eighteen miners. Factor No. 2 (the refusal of the eighteen miners to operate the mine on a co-operative basis) was not a strike or boycott: it was a determination by the eighteen miners that they would not undertake the co-operative plan. Neither Factor No. 3 (the effort to collect the $1,463 due by the Hixsons to the Union Fund) nor Factor No. 4 (the action by the miners for vacation bonus) can avail the Hixsons as a sufficient defense. There was no strike called by the Union. The Hixsons never notified the miners to return to work after the shut-down of December 1953; so there is no definite evidence of any refusal to work until factors 3 and 4 had been solved. Furthermore, it was the Hixsons' failure to pay the $1,463, admitted to be due, that caused the Union to attempt to collect the money.

In short, the Chancery Court was correct in holding that the Hixsons did not prove any strike or boycott to have been the proximate cause of the failure to operate the mine in 1954; and also the Chancery Court was correct in holding that the Hixsons did not prove themselves free of wrongdoing, because they admittedly failed to make the arrearage payments of $1,463 to the Union and then made no effort to get the vacation bonus pay action brought to trial.

Affirmed.