No. 93-349

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

DeTIENNE ASSOCIATES LIMITED PARTNERSHIP
and PARK PLAZA HOTEL, INC.,

     Plaintiffs and Respondents,

v.

MONTANA RAIL LINK, INC.,

     Defendant and Appellant.


APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          Edward A. Murphy, Datsopoulos, MacDonald
          & Lind, Missoula, Montana

     For Respondents:

          Patrick E. Melby, Luxan & Murfitt,
          Helena, Montana

Submitted on Briefs:  November 10, 1993

Decided:  February 17, 1994

FILED

Filed:  FEB 17 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant, Montana Rail Link, Inc., appeals from that portion of a judgment of the First Judicial District Court, Lewis and Clark County, awarding damages to respondents, DeTienne Associates and Park Plaza Hotel, Inc., for business interruption losses in excess of reimbursed insurance proceeds which were caused by a prolonged power outage after an explosion caused by a collision between Montana Rail Link trains.

Affirmed.

The issues are as follows:

1. Did the District Court err when it disregarded several of Montana Rail Link's proposed exhibits in determining Park Plaza's business interruption losses?

2. Was the District Court's finding that Park Plaza suffered $405,000 in business interruption losses clearly erroneous?

Respondent, DeTienne Associates (DeTienne), is a Montana limited partnership with its principal place of business in Helena. Respondent, Park Plaza Hotel, Inc. (Park Plaza), is a Montana corporation also with its principal place of business and hotel in Helena. DeTienne owns the hotel and Park Plaza operates it. Farmers Union Mutual Insurance Company (FUMI) is a Montana insurance company operating out of Great Falls, which insured Park Plaza under a special multi-peril policy of insurance. Montana Rail Link, Inc. (MRL), operates a railroad with tracks and a rail yard in Helena.

2

On February 2, 1989, MRL's rail cars, stopped on a mountain grade west of Helena, became uncoupled from the engine and rolled back toward Helena, colliding with MRL's yard engines. An explosion resulted which caused an extensive power outage in the Helena area. The power outage lasted four or more hours during extremely cold weather. During the power outage, Park Plaza's hot water heating system and reheat coils froze and broke. After heat was restored, water leaked from the broken pipes causing considerable damage to the hotel's ceilings, carpet, drywall, paneling, and a domestic hot water heater and tank.

In November 1989, Park Plaza started a remodeling project on some previously planned additions which delayed the demolition and reconstruction processes of some of the hotel's damaged areas.

On November 19, 1990, FUMI brought suit against MRL in Cascade County. On February 2, 1991, Park Plaza brought suit in Lewis and Clark County to recover damages. On May 31, 1991, FUMI intervened to assert its right of subrogation against MRL, and on October 22, 1991, its suit against MRL was transferred to Lewis and Clark County. On November 7, 1991, the First Judicial District Court consolidated the two suits and dismissed FUMI's separate complaint in intervention. On August 11, 1992, the parties stipulated that the issue of negligence would not be tried and that trial would be limited to the issue of proximate cause and damages. On August 27, 1992, the court granted partial summary judgment against MRL and in

favor of Park Plaza and FUMI for damages caused by the power outage.

Park Plaza and FUMI could not agree on the amount of the personal property and business interruption losses. Therefore, Park Plaza invoked the appraisal clause contained in its insurance policy with FUMI to determine the losses. Pursuant to the appraisal clause under the insurance policy, each party selected an appraiser, and those appraisers selected a third appraiser to serve as an umpire in the evaluation of claims at settlement negotiations. The appraisers found that Park Plaza's personal property loss was $24,006. But because the business interruption losses exceeded the $300,000 policy limit, FUMI's appraiser did not calculate the loss because FUMI was not obligated to pay Park Plaza any excess. FUMI's appraiser determined a reasonable indemnity period to be February 2, 1989, through September 18, 1989.

By order on October 15, 1992, the court granted Park Plaza and FUMI's motion to exclude MRL from calling any witnesses at the trial on October 19 and 20, 1992. At trial, Park Plaza sought $491,111 in business interruption losses for the period February 2, 1989, through December 31, 1989. Park Plaza based this claim on 1989 operating losses of $89,060, 1989 extraordinary income losses of $59,002, 1989 projected lost profits of $329,866, and 1990 bus tour losses of $13,183.

On March 26, 1993, the court found that Park Plaza's total business interruption losses reasonably related to the power outage

4

were $405,000, and awarded $105,000 to Park Plaza and $300,000 to FUMI. The court also found that the time period for purposes of determining the business interruption losses was February 2, 1989, through November 1, 1989.

At trial, the court did not rule on the admissibility of the MRL's proposed Exhibits H and I at issue on appeal. However, the court effectively denied their admission when, in its conclusions of law, it stated that it had not used the exhibits in determining the amount of Park Plaza's business interruption losses.

On April 23, 1993, MRL filed motions for a new trial or alternatively to amend the court's findings of fact. The court denied the motions. On July 2, 1993, MRL filed this appeal of the judgment for both Park Plaza and FUMI.

Subsequently, Park Plaza and FUMI each filed cross-appeals against MRL asserting that the record supported a much higher award of damages for the loss of business than that found by the District Court. However, after MRL satisfied FUMI's judgment, both MRL and FUMI dismissed appeals against each other on August 16, 1993. Similarly, on appeal, after Park Plaza considered this Court's applicable standard of review, it withdrew its cross-appeal against MRL. Of the total damages of $533,596.49 found by the District Court, MRL appeals that part of the award related to business interruption losses, $405,000, and specifically that portion Park Plaza claims to be in excess of the insurance reimbursement, $105,000.

Did the District Court err when it disregarded several of Montana Rail Link's proposed exhibits in determining Park Plaza's business interruption losses?

During cross-examination of FUMI's appraiser, MRL attempted to introduce two exhibits over the objections of Park Plaza and FUMI. MRL's proposed Exhibits H and I were a spreadsheet and an attached cover letter which had been prepared by Park Plaza's appointed appraiser and sent to FUMI's appointed appraiser during their settlement negotiations. The spreadsheet purported to show FUMI's subrogation claim against MRL from the period February through December, 1989. The cover letter revised that claim figure and also indicated that it was part of settlement negotiations in resolving the claim between Park Plaza and FUMI. FUMI's appraiser testified that he had not relied on either document when he determined Park Plaza's business interruption losses. Park Plaza and FUMI objected to admission of both exhibits on three grounds: (1) that FUMI's appraiser did not rely on the documents when he determined Park Plaza's business interruption losses; (2) that they were inadmissible as hearsay under Rule 802 of the Montana Rules of Evidence; and (3) that they were inadmissible as part of attempts to negotiate a compromise under Rule 408, M.R.Evid.

MRL asserts that the exhibits support its analysis of Park Plaza's business interruption losses. FUMI's expert put the letter and spreadsheet into his report submitted to MRL's attorney in an

attempt to generate some settlement discussions with MRL and to give the attorney an overview of the case's history. However, FUMI's expert testified that he did not rely on the exhibits to make his assessment of Park Plaza's business interruption losses. Thus, the evidence was not relevant to the issue of damages because it was not the basis upon which the expert formed his opinion. Rules 402 and 703, M.R.Evid.

The rules of evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), M.R.Evid. Hearsay is not admissible unless it falls under an exception in another of the rules of evidence. Rule 802, M.R.Evid. The cover letter and spreadsheet were prepared by Park Plaza's appraiser, the declarant who did not testify at trial. Under Rules 801(c) and 802, M.R.Evid., these proposed exhibits were hearsay and properly excluded.

In the cover letter, Park Plaza's appraiser stated: "I hope we can make some progress on resolving this claim. . . . After you have had an opportunity to review this [attached spreadsheet], please give me a call so we can make settlement on this claim."

MRL asserts that although Rule 408, M.R.Evid., excludes conduct or statements made in compromise negotiations, it does not exclude evidence otherwise discoverable. MRL argues that the appraiser's spreadsheet report and cover letter were a statement

against interest of a party opponent under Rule 801(d)(2)(A) and (D), M.R.Evid., and thus discoverable.

The rules of evidence specifically allow a trial court to exclude evidence of accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to its amount. Rule 408, M.R.Evid. That rule reads in pertinent part:

> Evidence of . . . accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. [Emphasis added].

The record indicates that although the early results of Park Plaza and FUMI's negotiations concerning the amount of business interruption losses may otherwise have qualified as statements against their own interest, they were not made as independent statements of fact, but instead were made as offers for an amicable compromise between those parties. Lenahan v. Casey (1912), 46 Mont. 367, 379, 128 P. 601; Gamble-Skogmo, Inc. v. McNair (1951), 98 F. Supp. 440, 442; A. E. Korpela, Annotation, Admissibility of Admissions Made in Connection With Offers or Discussions of Compromise, 15 A.L.R.3d 29-30 (1967). Evidence of attempts to compromise a settlement are properly excluded based on the privilege grounded in public policy to encourage compromises and settlements. The court properly excluded the letter and

8

spreadsheet as part of settlement negotiations under Rule 408, M.R.Evid.

The standard of review for discretionary trial court rulings is whether the trial court abused its discretion. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 604.

We hold that the evidence is not admissible, and the District Court did not abuse its discretion. We affirm the District Court on this issue.

## ISSUE 2

Was the District Court's finding that Park Plaza suffered $405,000 in business interruption losses clearly erroneous?

We will affirm the findings of a trial court sitting without a jury if the findings of fact are not clearly erroneous. Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 322, 820 P.2d 1285, 1287. However, we will substitute our judgment for that of the District Court if we find that it is not supported by substantial credible evidence, misapprehends the effect of the evidence, and leaves us with the definite and firm conviction that a mistake has been committed. Interstate Prod., 820 P.2d at 1287.

As stated, at trial the court reserved ruling on the objections to MRL's proposed Exhibits H and I, and allowed FUMI's appraiser to testify about their contents. However, the court did not rely on the exhibits when it evaluated Park Plaza's business

interruption losses, and so stated in conclusion of law number nine.

MRL asserts that the record contained no evidence to support the court's award of $405,000, and that with evidence contained in Exhibits H and I, MRL could have established that Park Plaza's business losses were only $321,279.

The record shows substantial credible evidence with which the court could support an award of $405,000 in business interruption losses to Park Plaza. Park Plaza's expert accounting witness on damages testified that for the period of February 2, 1989, through December 31, 1989, business interruption losses were at least $490,491. This expert testified from a schedule which he had prepared for his damage claim summary. That schedule actually put those losses at $491,111. In addition, DeTienne's general manager testified that the total business losses were $512,623 for the same period. Park Plaza's and FUMI's expert witnesses testified that DeTienne's general manager had made reasonable assumptions in determining the business interruption losses. DeTienne's general manager also testified that in November 1989, Park Plaza started a previously planned remodeling project. On these facts, the court had sufficient evidence with which to support its award for business interruption losses to Park Plaza in excess of MRL's claim of only $321,279.

The court also determined that the business interruption losses award should cover the period from February 2, 1989, through

10

November 1, 1989, instead of through December 31, 1989. The court also had sufficient evidence with which to make this determination because of Park Plaza's self-imposed business interruption losses attributable to delay caused by its November 1989 remodeling project. From the foregoing, it is clear that the first part of the three-part test in Interstate Prod. is satisfied because there is substantial credible evidence to support the court's findings. The second and third parts are satisfied because we hold that the District Court did not misapprehend the effect of the evidence, and we are not left with a firm and definite conviction that a mistake had been committed.

We hold that the District Court's finding that Park Plaza suffered $405,000 in business interruption losses was not clearly erroneous and we affirm the District Court on this issue.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____
Justices

11

February 17, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Edward A. Murphy
DATSOPOLOUS, MacDONALD & LIND, P.C.
201 West Main, Suite 201
Missoula, MT 59802

Robert F. James
JAMES, GRAY & McCAFFERTY
P.O. Box 2885
Great Falls, MT 59403

Patrick E. Melby
LUXAN & MURFITT
P.O. Box 1144
Helena, MT 59624-1144

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA
BY: _____
Deputy