No. 99-339

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 382

304 Mont. 21

16 P. 3d 1062

JAMES P. SLETTELAND, individually and on behalf of

Billings Generation, Inc., a Montana corporation, and

BILLINGS GENERATION, INC., as general partner of,

and on behalf of Yellowstone Energy Limited

Partnership, a Montana limited partnership,

Plaintiffs and Appellants,

v.

R. LEE ROBERTS, OWEN H. ORNDORFF and BILLINGS

GENERATION, INC., a Montana Corporation,

Defendants and Respondents.

_____

R. LEE ROBERTS and OWEN H. ORNDORFF,

Counterclaimants,

JEFFREY L. SMITH,

Intervening Counterclaimant,

v.

JAMES P. SLETTELAND,

Counterclaim Defendant.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Ronald F. Waterman, Gough, Shanahan, Johnson & Waterman, Helena, Montana; Bernard M. Althoff, Anne B. Carroll, Satterlee, Stephens, Burke & Burke, New York, New York

For Respondents:

Ward E. Taleff, Alexander, Baucus, Taleff & Paul, Great Falls, Montana

Submitted on Briefs: July 20, 2000

Decided: December 28, 2000

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1 James Sletteland brought this derivative action against two other shareholders, R. Lee Roberts and Owen Orndorff alleging breach of fiduciary duty and self-dealing, requesting a return of excessive legal fees and a removal of Orndorff and Roberts as directors. Roberts, Orndorff and a third shareholder, Jeff Smith, counterclaimed, alleging that Sletteland brought the suit in bad faith causing damage to the company and to the other shareholders. The District Court ruled for Sletteland on the initial complaint, and for Roberts and Orndorff on the counterclaim. Sletteland appeals, and Robert and Orndorff cross appeal. We affirm in part and reverse in part.

¶2 Each side has presented a variety of issues, but they can be summarized as follows:

¶3 1. Whether the District Court erred in holding that Orndorff and Roberts had charged the partnership for legal fees at a rate that had not been agreed upon and was excessive.

¶4 2. Whether the District Court erred in finding that Sletteland breached his fiduciary duties to the other shareholders of the corporation and the partnership, causing damage to the corporation and the other shareholders.

Facts

¶5 James P. Sletteland, the appellant, was a shareholder in a closely held Montana corporation called Billings Generation, Inc. (BGI). The four other shareholders in BGI were Jeff Smith, Ron Blendu, Owen Orndorff and R. Lee Roberts. The five shareholders each have expertise and experience in the area of power production in different capacities. As a group, they have been involved with several projects, corporations, and partnerships. Each shareholder owned 20% of the shares in BGI. At the time of the litigation, all five were directors of BGI; Orndorff, Roberts and Smith were officers. Blendu and Sletteland had both been removed as officers by vote of 60 percent of the shareholders, i.e., Orndorff, Roberts and Smith.

¶6 Orndorff and Roberts are both attorneys practicing in Boise with experience in the area of cogeneration. Neither is licensed to practice in the state of Montana. Sletteland has been employed for over 18 years as an investment banker, and is a law school graduate who is licensed to practice law in New York.

¶7 A variety of corporate entities and partnerships were discussed at trial and in the District Court's findings, but the relevant entities are as follows: BGI; Exxon Billings Cogeneration, Inc. (EBCI), a Montana Corporation which is a solely owned subsidiary of Exxon U.S.A., Inc. Corporation; and the Yellowstone Energy Limited Partnership (YELP), which is a partnership between BGI and EBCI. The purpose of the YELP partnership was to acquire, design, construct, invest in, own, maintain, develop, improve, manage and otherwise operate a qualified cogeneration or small power production facility under the Public Utility Regulatory Policy Act (PURPA) to be constructed and developed near Billings, Montana. In this partnership, BGI is the general partner and holds a 35% interest in YELP. EBCI is the limited partner with a 65% interest in YELP. YELP owns and operates a cogeneration plant in Billings, Montana which generates steam and electric power.

¶8 In the process of establishing this plant, Orndorff and Roberts rendered legal services and billed YELP for these services. YELP paid a total of $633,000 to the two of them between mid-1993 and February 1996. Each charged a rate of $225 per hour.

¶9 James Sletteland and Ronald Blendu brought an action individually and on behalf of BGI and YELP seeking recovery of excessive legal fees charged by Roberts and Orndorff and for removal of Roberts and Orndorff from the board of directors of BGI. Roberts, Orndorff and Smith filed a counterclaim alleging that the filing of the initial lawsuit by Sletteland derailed the financing of an energy project of the partnership in which all parties are involved. Orndorff, Roberts and Smith argue that this action amounted to a breach of fiduciary duty and negligence. Blendu was involved with the initial action, but settled with the other parties prior to appeal.

¶10 At the time the initial lawsuit was filed, the project was having financial trouble due to technical problems with the plant and high interest debts. The YELP project was attempting to refinance these high interest debts with lower interest financing. The window of opportunity for the financing being attempted was short, and Orndorff, Roberts and Smith alleged that the timing of the lawsuit by Sletteland was specifically intended to derail financing. Ultimately, the refinancing fell through.

¶11 On the original claim, the District Court found that the attorneys had overcharged and required repayment based on a reduced hourly rate, but did not find evidence of fraud and did not remove them as directors. On the counterclaim the District Court found that Sletteland was negligent and breached his fiduciary duties to BGI and his fellow

shareholders by the timing of his filing of the main action. Sletteland was found liable to the other three shareholders in the amount of $3,027,939. Sletteland appeals from this judgment and Orndorff, Roberts and Smith cross-appeal.

## Standard of Review

¶12 We will affirm the findings of a trial court sitting without a jury if the findings of fact are not clearly erroneous. *DeTienne Assoc. v. Montana Rail Link* (1994)*,* 264 Mont. 16, 22, 869 P.2d 258, 262. However, we will substitute our judgment for that of the District Court if we find that it is not supported by substantial credible evidence, misapprehends the effect of the evidence, and leaves us with the definite and firm conviction that a mistake has been committed. *DeTienne Assoc.,* 264 Mont. at 22, 869 P.2d at 262.

## Discussion

## Issue 1

¶13 **Whether the District Court erred in holding that the hourly rate for legal fees charged by Orndorff and Roberts to the partnership had not been agreed upon and was excessive.**

¶14 The cross-appellants argue that the District Court erred in holding that the hourly rate charged by Orndorff and Roberts had not been agreed upon and was excessive. They argue that the YELP partnership agreement establishes that EBCI, the limited partner, "was the sole arbiter of the hiring, scope and cost of the partnership's representation by Orndorff and Roberts."

¶15 Where the language of the contract is clear and unambiguous and susceptible to only one interpretation, the duty of the court is to apply the language as written. *Carelli v. Hall* (1996), 279 Mont. 202, 209, 926 P.2d 756, 761.

¶16 As the general partner, BGI was responsible for the management of YELP. The YELP agreement, however, contained a provision dealing with restrictions on the power and authority of the general partner. This included a limitation on the general partner's ability to incur legal expenses. Section 5.3(d) reads, in part, as follows:

> The Limited Partner acknowledges that Owen Orndorff, Esq. And Lee Roberts, Esq., Affiliates of the General Partner, could have special legal knowledge with

respect to certain issues affecting the project, including those involved in the Montana Major Facility Siting Act, the Construction Agreement, the MPC Agreement and Project permits. Provided that the Limited Partner determines that the proposed services are reasonably required, and that the scope and projected cost of the services are reasonable, the Limited Partner may, in its sole discretion, consent to the engagement of Messrs. Orndorff and Roberts to perform legal services for the Partnership in connection with the foregoing issues or other issues related to the Project.

In the event the Limited Partner withholds its consent with respect to any proposed legal services by Messrs. Orndorff or Roberts, it is nevertheless agreed that they may perform legal services for the Partnership in connection with reasonably required tasks of a reasonable scope at reasonable hourly rates and in an amount not to exceed $60,000 per year in the aggregate . . .

In subsection (k), the agreement continues, providing that the General Partner may not:

*except as permitted in Section 5.3(d)* enter into any contract, agreement or other arrangement, or make any payment for services or otherwise, with or to any Affiliate of the General Partner (emphasis added).

¶17 The District Court concluded that Section 5.3 requires written permission from EBCI to hire Orndorff and Roberts to perform legal services, referring to the restriction on engaging in "any transaction between the partnership and the general partner or its affiliates."

¶18 The partnership agreement, however, is unambiguous in that it clearly excluded the hiring of Orndorff and Roberts for legal services from this limitation on contracts with BGI affiliates. Contrary to the District Court's interpretation, the YELP agreement recognized that Orndorff and Roberts would be performing legal services on behalf of YELP. With the approval of EBCI, fees were to be paid as an expense of the partnership. Without EBCI's approval, there was a $60,000 annual limitation on payment.

¶19 In addition, EBCI, as the limited partner, was the approving authority for the legal bills and the rate. The partnership agreement provides for this approval, and there is no indication from the record that this was deemed unreasonable by the client. In fact, the District Court noted that EBCI was made aware in 1993 that both Orndorff and Roberts

would be charging $225 per hour for their services.

¶20 EBCI performed annual audits, including one covering 1994, concluding that "the general partner and the operator were in compliance with the limited partnership agreement in all areas." This audit indicated that there was an informal procedure for approval, but in the future, additional follow-up was needed with BGI regarding legal fees.

¶21 The District Court found that the $225 per hour fee charged by Orndorff and Roberts was "excessive." However, there is sufficient evidence in the record that the fees charged by Orndorff and Roberts were reasonable given the complexity of the project as well as the acceptance of the rate by the approving authority, despite testimony given on behalf of Sletteland that the maximum reasonable legal fee in Montana was $130. The District Court noted that it relied heavily on this testimony in its decision. However, the record shows that in work done on similar projects the attorneys had charged $225 per hour and that other attorneys working in this area of law charge higher rates. Testimony was presented that the work provided in relation to this project was highly specialized, with very few attorneys available to provide work in this area. In addition, the District Court noted in its findings on the counter claim that Sletteland himself had received compensation at a higher rate later on. It is also notable that at the time evidence was presented that $130 was the maximum reasonable rate for a lawyer in Montana, Sletteland's own local counsel was charging $150 per hour.

¶22 The YELP partnership agreement specified that the limited partner had the authority to approve legal expenses. It was up to the limited partner to modify the procedure for approving legal work, or to demand repayment if the work was found to be unacceptable. The rate was approved in advance and all parties were aware of it. We find that the District Court has abused its discretion in modifying the rate for legal work. We reverse on this issue.

¶23 We note that as part of his appeal, Sletteland argues that Orndorff and Roberts should have been removed as directors of BGI pursuant to § 35-1-425, MCA. In light of our discussion and decision in the first issue, we find this contention to be without merit.

## Issue 2

¶24 **Whether the District Court erred in finding that Sletteland breached his fiduciary duties to the other shareholders of the corporation and the partnership,**

**causing damage to the corporation and the other shareholders.**

¶25 In the counterclaim filed against Sletteland; Orndorff, Roberts and Smith claim that Sletteland breached the fiduciary duty owed to them in bringing the lawsuit. Orndorff, Roberts and Smith claim that the timing of the lawsuit caused refinancing of the project to fail, causing damage to the corporation and to other shareholders. Sletteland argues that there was no breach of duty, that the District Court erred in determining that the lawsuit caused the financing to fail, and that the determination of damages by the District Court was erroneous.

¶26 At the time the lawsuit was filed, BGI and EBCI were attempting to obtain additional tax exempt financing for the project. The physical facility was in need of repair, and the project owed large amounts to its creditors, at a high interest rate. BGI was among the parties that would have received payment as a creditor of the YELP project. Due to certain federal tax requirements, it was necessary that the refinancing be completed by June 25, 1997.

¶27 The District Court found that there were two causes delaying the refinancing. First, there were some business issues that had not been agreed upon. According to testimony, these were not "deal breakers", but some changes needed to be made before financing could go ahead. Second, the lawsuit became an issue hampering the refinancing. The court determined that despite the business issues, the parties were attempting to continue with the refinancing until May of 1997, but that it would be impossible to segregate the two issues to determine the ultimate cause of failure.

¶28 The District Court noted that a letter from the President of EBCI to Orndorff in November of 1996 indicates that the lawsuit was a major cause to the failure of refinancing, stating:

> EBCI is willing and eager to recommence all activities related to refinancing. As was communicated to you, we believe that the dispute among the owners of BGI has created a serious impediment to YELP's ability to move forward with refinancing. This belief is underscored by the letter from the partnership's bond counsel indicating that where fraud has been alleged against the senior officers of the general partner, underwriters are unlikely to take up the bonds until the litigation is resolved. It appears to us that BGI and its owners have, in effect, caused termination of the refinancing effort.

In addition, bond counsel indicated that until the litigation was resolved, underwriters or purchasers were unlikely to take up the bonds.

¶29 The District Court applied the "substantial factor" test in determining whether Sletteland's actions caused the refinancing to fail, and as a result caused damage to BGI. This was the appropriate standard under these circumstances. "In those cases where there are allegations that the acts of more than one person combined to produce a result . . . we recommend continued use of the substantial factor test." *Busta v. Columbus Hosp. Corp.* (1996), 276 Mont. 342, 371, 916 P.2d 122, 139-40. Where there is more than one cause of the damages the court must determine whether the alleged act was a substantial factor in causing the damage. *Busta,* 276 Mont at 371, 916 P.2d at 140. When two or more causes concur to bring about an event, then cause-in-fact is established by the "substantial factor" test. *Rudeck v. Wright* (1985), 218 Mont. 41, 53-54, 709 P.2d 621, 628-29.

¶30 Sletteland breached his duty of care to his fellow shareholders. The fiduciary duty between stockholders of a close corporation is one of the "utmost good faith and loyalty." *Daniels v. Thomas, Dean & Hoskins, Inc.* (1990), 246 Mont. 125, 137, 804 P.2d 359, 366. Sletteland makes the argument that this standard only applies to a majority shareholder. On the contrary, this duty of good faith cannot be limited where a minority shareholder has power to do damage to the corporation.

¶31 We agree with the District Court that Sletteland, in filing his suit, "did not use the care an ordinarily prudent person would in a similar position." Sletteland admittedly knew of the refinancing. The District Court noted that he is "an attorney and an investment banker who is quite knowledgeable in financial matters." In that capacity, he would have been aware of the effect that a lawsuit, alleging misconduct of the board members, would have on a refinancing effort. The District Court concluded that Sletteland "either intentionally decided to derail the refinancing, since the other parties would not do the refinancing on his terms, or was so careless in his activities that no reasonable person could be expected to act in a similar manner." The record supports this conclusion.

¶32 There was clearly animosity in the relationship between the business partners. In March of 1996, Sletteland had submitted a bill to BGI for $39,000, charging $325 an hour with no documentation to substantiate any work done. BGI did not want to pay the bill, but the limited partner wanted to close financing and directed that the bill be paid. Ultimately, in June of 1996, Sletteland was removed as an officer of BGI. According to Roberts and Orndorff, Sletteland and Blendu wanted the other three shareholders to

purchase their interests, and warned that "unpleasant things would happen" if their demands were not met.

¶33 It appears that the suit was brought specifically to derail refinancing of the project. Sletteland admitted at trial that the timing of the suit was up to him and that he was not faced with any statute of limitations problem. The initial law suit was filed by Sletteland on October 2, 1996. This was immediately before the individuals involved in the refinancing were to meet to discuss the refinancing. He did no investigation to see what the effect of the lawsuit would be on the refinancing. The court concluded that "it only makes sense that he would be expected to know that the filing of his suit alleging director fraud would delay or derail the refinancing. . . there was no particular reason to file this suit when he did. He was asked to withdraw the suit so that the refinancing could conclude, but he refused to do so."

¶34 Sletteland contends that federal securities laws required him to file his suit in the midst of refinancing. This argument, however, was not raised at the trial court level, and we decline to address it here. The rule is well established that we do not consider issues raised for the first time on appeal. *Unified Industries, Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15.

¶35 Sletteland objects to the District Court's award of damages, claiming that the projections given were without basis.

¶36 The standard of review when reviewing an award of damages is whether the trial court abused its discretion. *Edington v. Creek Oil Co.* (1984), 213 Mont. 112, 127, 690 P.2d 970, 978. Future damages need only be reasonably certain. Some degree of speculation is necessary. *Kerr v. Gibson's Products Co. of Bozeman* (1987), 226 Mont. 69, 74, 733 P.2d 1292, 1295.

¶37 The District Court based its calculation of damages on expert testimony presented by Dr. Paul Polzin, a well known regional economist. Dr. Polzin calculated both out of pocket expenses on the failed refinancing as well as future damages to Orndorff, Roberts and Smith. We find that while the future damages cannot be calculated exactly, the District Court did not abuse its discretion in its award.

¶38 We affirm the decision of the District Court on this issue.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER