

DA 09-0643

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 142

DAVID PETERMAN,

      Plaintiff and Appellant,

    v.

HERBALIFE INTERNATIONAL, INC.,
and HERBALIFE OF AMERICA, INC.,

      Respondents and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 00-21-C
Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      James Greenfield; Attorney at Law; Radnor, Pennsylvania

      For Appellees:

      Sean P. Goicoechea; Christensen Moore Cockrell Cummings &
Axelberg, P.C.; Kalispell, Montana

      Charles E. Patterson, Morrison & Foerster, LLP; Los Angeles, California

Submitted on Briefs:  April 28, 2010

Decided:  June 29, 2010

Filed:

_____
                        Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Plaintiff David Peterman sued Defendants Herbalife International Inc. and Herbalife of America Inc. (collectively, "Herbalife") for, *inter alia*, breach of contract. The District Court for the Eleventh Judicial District, Flathead County, dismissed Peterman's case on account of discovery abuses. Peterman appeals this and two other pretrial rulings. We conclude that the District Court did not abuse its discretion in dismissing the case and, therefore, affirm.

¶2     The dispositive issue on appeal is whether the District Court erred in dismissing Peterman's case as a sanction for discovery abuse.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Herbalife produces weight-loss and dietary supplements, as well as "personal care" products. Herbalife is a multilevel marketing business (or, "MLM") that sells its wares worldwide through a network of independent distributors. Under this pyramidal sales structure, an interested person becomes a distributor through an existing distributor, called a "sponsor." The aspiring distributor submits an application for distributorship and purchases a "distributor kit" from Herbalife. When Herbalife accepts the application of distributorship, the person becomes a distributor, entitled to purchase Herbalife products at a discounted price. The sponsor and the line of distributors between him and the peak of the distribution pyramid become the "upline" of the new distributor. The new distributor may then recruit additional distributors, who become his "downline."

2

¶4 An Herbalife distributor may earn compensation in a number of ways. First, the distributor, after purchasing Herbalife products at discount, may resell them at retail for profit. Second, if the distributor purchases (for resale) a certain quantity of Herbalife products in a specified period, he becomes a "supervisor," entitled to earn royalties from the sales of distributors in his downline. Third, Herbalife offers distributors who purchase a still greater volume of products the option to enter into an agreement in which the distributor forswears participation in any other MLM and in return becomes entitled to additional bonus payments based on downline sales.

¶5 Peterman, along with his wife Sharon, applied and became a distributor with Herbalife in 1985. Peterman enjoyed a measure of success as a distributor, eventually qualifying for and entering into Herbalife's bonus program. In 1998 Peterman and Sharon dissolved their marriage, and their dissolution decree awarded Peterman's interest in the Herbalife distributorship to Sharon.

¶6 The present case began a decade ago in 2000, when Peterman and a handful of other distributors sued Herbalife, alleging breach of contract, as well as various tort claims that were subsequently dismissed. Regarding the contract claim, Peterman asserted that Herbalife "denied [him] royalty and bonus checks to which he was entitled and stripped away portions of his downline organization." For relief, Peterman sought damages "for all losses sustained . . . as a result of [Herbalife's] breach of contract."

¶7 In 2001 Herbalife sought discovery of Peterman's federal and state income tax returns for 1993 through 2000. Peterman objected that the request was "unduly

3

burdensome, oppressive and harassing, and [was] not reasonably calculated to lead to discovery of admissible evidence." An initial trial date in 2004 was vacated. In 2006, on the eve of the second trial date (which was also later vacated), Herbalife served its third request for production of documents on Peterman, seeking all documents relating to Peterman's income from 1994 to the present, including tax returns. Peterman objected generally that the period for discovery had ended, that Herbalife was only attempting to disrupt Peterman's trial preparations, and that the requests were duplicative. Peterman then repeated his specific objection that the request was overbroad, burdensome, and beyond the scope of discovery. Nevertheless, Peterman admitted, "In the unlikely event that any responsive documents are used in preparation of plaintiff's expert report on damages, plaintiff will deliver such documents to defendant in conjunction with the expert report."

¶8 In June 2006 Herbalife responded to the objections by moving to compel production of Peterman's tax returns from 1993 to 2006. In the alternative Herbalife sought, as a sanction, to exclude any evidence of Peterman's damages. Herbalife contended that discovery of the tax returns was proper and was necessary to determine if Peterman had "met [his] duty to mitigate [his] damages." Peterman opposed Herbalife's motion. He argued that his "mitigation attempts began after July 1998, when he transferred his interest in his distributorship to his former wife, Sharon," and that he had produced all evidence within his control of his income for the period of 2000 to 2005. He

4

also argued that Herbalife was seeking his tax returns for 1998 and earlier years for reasons other than mitigation.

¶9     The District Court addressed the motion to compel at a pretrial hearing in July 2006.  At the hearing, counsel for Peterman conceded that Peterman did not possess tax returns for 1998 onwards because he had failed to file his tax returns.  Despite this oversight, Peterman's counsel assured the District Court, Peterman was planning to file: "He is actively working on the problem with an entity that helps people deal with issues regarding past returns, trying to put those returns together now.  But they have not, as of this time, been filed."  Peterman also asserted that he did not posses his tax returns for 1998 and earlier, but that they were in the possession of his ex-wife Sharon.  The District Court indicated that it was granting Herbalife's motion to compel.  The court reasoned that the tax returns were discoverable and that Peterman, though he did not possess his tax returns, was required to retrieve them from either Sharon or the IRS.  The District Court concluded that sanctions were not appropriate at that time:

> The only sanction that would be available to the Court would be to prevent [Peterman] from providing any evidence as to income during those years, or any damages during those years, which would be a sanction that to this Court would be draconian to say the least, would be beyond what should be sanctioned in this case.

The District Court did not issue a written order compelling discovery.  Nor did the court directly address the tax returns (for 1998 and forward) that Peterman had not, at that time, prepared.

5

¶10 In September 2006 Peterman provided Herbalife with his and Sharon's joint tax returns for 1996 and 1997. He further indicated that he was trying to determine if the IRS had destroyed his tax returns for 1993 to 1995. Regarding his taxes for the years after 1998, Peterman wrote, "Dave's returns for the years 1999-2005 are being prepared and will be produced as soon as they are completed. . . . We expect to deliver tax documents to you by November 15." In January 2007 Peterman's counsel wrote to Herbalife's counsel that the IRS could not find copies of Peterman's tax returns for 1993 to 1996 and that Peterman had not completed his tax returns for 1998 onwards. Peterman subsequently authorized Herbalife to seek his tax returns for 1993 to 1996 from the IRS, but Herbalife was no more successful with the IRS than Peterman had been. Ultimately, Peterman did not file tax returns for the years beginning in 1998.

¶11 In July 2008, two years after the District Court granted Herbalife's motion to compel, Herbalife moved to dismiss the case on the grounds that, despite the court's order, Peterman had not produced his tax returns for 1993 to 1995 and "if he filed them," Peterman had not produced his tax returns for 1998 and forward. Herbalife argued that by failing to produce his tax returns, Peterman had delayed the case for two years and impaired Herbalife's ability to present a defense. Peterman countered that he had not, in fact, failed to comply with the District Court's order compelling discovery. Peterman reasoned that he had requested his tax returns for 1993 to 1997 from both Sharon and the IRS and that he had forwarded to Herbalife all the returns that he received (those for 1996 and 1997). Further, Peterson continued, he never completed tax returns for 1998 and

6

onwards, so the District Court could not compel him to produce those nonexistent documents. Peterman blamed Herbalife for the delay and argued that given the District Court's previous statement about sanctions being "draconian," Peterman had no reason to believe that he even faced the threat of sanctions.

¶12    The District Court agreed with Herbalife's arguments and dismissed the case. The court reasoned that Peterson had completely failed to comply with Herbalife's discovery requests and the court's order compelling discovery. This evidenced disregard for the court's authority and disregard for the rights of Herbalife. The District Court also concluded that alternative sanctions would not be appropriate and that dismissing the case would serve to alleviate its "excessive back-log of cases."

¶13    This appeal followed.

## STANDARD OF REVIEW

¶14    We employ an abuse of discretion standard in reviewing a district court's imposition of sanctions for discovery abuse. *In re Marriage of Lundstrom*, 2009 MT 400, ¶¶ 15-16, 353 Mont. 436, 221 P.3d 1178.

## DISCUSSION

¶15    *Whether the District Court abused its discretion in dismissing Peterman's case as a sanction for discovery abuse.*

¶16    Peterman presents two principal arguments to show that the District Court abused its discretion in dismissing his case. First, he contends that the tax returns were not relevant to mitigation or damages (and thus not discoverable under the Montana Rules of

7

Civil Procedure). Second, Peterman asserts that he acted in good faith, producing all tax returns that were in his control. Peterman also advances that he had no reason to believe that he faced sanctions. We find these arguments unpersuasive.

¶17 Discovery, we have observed, enables courts and parties to determine the truth of a given matter so that cases may be resolved justly. *Richardson v. State*, 2006 MT 43, ¶ 22, 331 Mont. 231, 130 P.3d 634. Of course, discovery may also serve, less nobly, as an instrument for inflicting significant and unjustified costs on one's opponent. *See* M. R. Civ. P. 26(c) (providing for protective orders from oppressive discovery requests). We have repeatedly articulated a low-tolerance approach toward discovery abuse, encouraging district courts not to give transgressors second chances but rather to impose sanctions. *Linn v. Whitaker*, 2007 MT 46, ¶ 19, 336 Mont. 131, 152 P.3d 1282; *Richardson*, ¶¶ 56-57; *Xu v. McLaughlin Research Inst. for Biomedical Sci., Inc.*, 2005 MT 209, ¶ 20, 328 Mont. 232, 119 P.3d 100.

¶18 Under Montana Rule of Civil Procedure 37(b)(2)(C), when a party fails to obey an order to provide discovery, the district court may impose sanctions, including dismissal of the action. As the first step of our analysis, we consider whether Peterman failed to obey an order of the District Court to provide discovery. *See Xu*, ¶ 21; *Smith v. Butte-Silver Bow Co.*, 276 Mont. 329, 333, 916 P.2d 91, 93 (1996). Here, though it could have been more explicit, the District Court granted Herbalife's motion to compel. This motion had sought production of Peterman's tax returns from 1993 to 2006. It is undisputed that Peterman only produced his joint returns (with Sharon) for 1996 and 1997.

8

¶19 Peterman argues that he did not violate the District Court's order because (1) his tax returns were not relevant to mitigation or damages and (2) because he produced all the information he had or could acquire. Peterman's first argument is based on Montana Rule of Civil Procedure 26(b)(1), which limits discovery to "any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party." Peterman contends that his breach of contract claim is based on Herbalife's removing portions of his downline distribution network. This, Peterman maintains, caused him to lose royalty and bonus payments. He could not have avoided these losses by seeking income from other sources. Therefore, Peterman concludes, his damages should not be reduced simply because he might have received income from some other source.

¶20 There are two flaws in this argument. First, Peterman did not raise this argument below, either in his objections to Herbalife's initial discovery request, or in his response to Herbalife's motion to compel production, or in his response to Herbalife's motion to dismiss. *See Molnar v. Mont. Pub. Serv. Commn.*, 2008 MT 49, ¶ 11, 341 Mont. 420, 177 P.3d 1048 (providing that the Court does not address arguments presented for the first time on appeal because it is unfair to fault trial courts on issues that they did not have the opportunity to address). Second, even though Peterman did not articulate his precise theory for damages, he did concede in his response to Herbalife's motion to compel production of the tax returns that "his mitigation attempts began after July 1998." This

statement indicates that Peterman, himself, concluded that he was required to make reasonable efforts to mitigate damages after 1998. This conclusion is bolstered by Peterman's allegations in the amended complaint that Herbalife "stripped away and crippled [his] distributorship . . . , making it impossible for him to continue in business." And it is consistent with his broad prayer for relief, seeking damages "for all losses sustained by [him] as a result of [Herbalife's] breach of contract." Accordingly, by Peterman's own account, his finances after 1998 were relevant to the issue of mitigation of damages. We are thus unpersuaded by Peterman's first argument.

¶21 Nor are we persuaded by Peterman's second argument (that he produced all tax returns in his possession or control). The basis of this argument is Montana Rule of Civil Procedure 34(a), which limits production of documents to those that "are in the possession, custody or control of the party upon whom the request is served." To analyze Peterman's argument, it is helpful to consider separately Peterman's tax returns from 1993 to 1997, which he filed, and those for 1998 onwards, which he did not file (despite assurances that he would). Contrary to the District Court's suggestion, we conclude that Peterman was not at fault for not producing more tax returns for the years prior to 1998. He did not possess the records, and the IRS apparently could not locate them, as demonstrated by Herbalife's failed attempt to retrieve the returns directly from the IRS with Peterman's authorization. As such, they were not within the ambit of Rule 34(a).

¶22 On the other hand, we agree with the District Court that Peterman failed to comply with its order by not filing and producing tax returns for 1998 onwards. By its plain

10

language, Rule 34(a) does not require parties to produce nonexistent documents. However, we have held that a party may be sanctioned for making repeated assurances to provide discovery and then failing to do so. *See Menholt v. State*, 2009 MT 38, ¶¶ 13-14, 349 Mont. 239, 203 P.3d 792; *Linn*, ¶ 16. Here, Peterman repeatedly assured both the District Court and Herbalife that he would file his tax returns and then produce them for Herbalife. At the July 2006 hearing on Herbalife's motion to compel, Peterman's counsel stated that Peterman "is actively working on the problem with an entity that helps people deal with issues regarding past returns, trying to put those returns together now." Then in September 2006, after the District Court granted Herbalife's motion to compel, Peterman's counsel wrote to Herbalife's counsel, "Dave's returns for the years 1999-2005 are being prepared and will be produced as soon as they are completed. . . . We expect to deliver tax documents to you by November 15 [2006]." In January 2007 Peterman's counsel again indicated that Peterman was preparing to file his tax returns and that he would then produce them for Herbalife: "The returns for the period after 1998 are not yet completed." Then, in response to Herbalife's motion to dismiss in 2008, Peterman performed a volte-face, writing, "Unfortunately, although he intended to complete and file his personal tax returns for the years commencing in 1998, Peterman has not done so. It is not clear when or if those returns will ever [be] completed." This was an abuse of the discovery process.

¶23 Having concluded that Peterman committed a discovery abuse, we next consider the propriety of the sanctions levied. *Xu*, ¶ 21. District courts are better positioned than

11

we are to evaluate the conduct and good faith of parties during discovery, and as such they enjoy considerable leeway in sanctioning discovery abuses. *Menholt*, ¶ 13; *Owen v. F.A. Buttrey Co.*, 192 Mont. 274, 280-81, 627 P.2d 1233, 1237 (1981). We review sanctions imposed by a district court to determine if they are roughly proportionate to the gravity of the abuse and the inconvenience visited upon other parties and the district court. *See Culbertson-Froid-Bainville Health Care Corp. v. JP Stevens & Co.*, 2005 MT 254, ¶¶ 14-15, 329 Mont. 38, 122 P.3d 431; *McKenzie v. Scheeler*, 285 Mont. 500, 516, 949 P.2d 1168, 1177-78 (1997); *Smith*, 276 Mont. at 339-40, 916 P.2d at 97. Dismissal is an extreme sanction, which is generally too severe if a party's conduct is inadvertent or does not result in any serious inconvenience to other parties or the district court. *McKenzie*, 285 Mont. at 514, 949 P.2d at 1176; *see also* Charles Alan Wright et al., *Federal Practice and Procedure* vol. 8B, § 2284, 465 n. 41 (3d ed., West 2010) (listing cases). Neither the language of Rule 37(b)(2) nor our precedent requires a district court to expressly warn a party before imposing sanctions. *Culbertson*, ¶ 15. However, if the court opts to expressly warn of sanctions, the sanctions imposed must be consistent with the warning. *Id.*

¶24 Here, we conclude that the District Court did not abuse its discretion in dismissing Peterman's case. Peterman repeatedly assured Herbalife and the District Court that he would file his tax returns for 1998 onward, but failed to do so. Peterman has offered no explanation for this failure, and there is no basis for chalking it up as inadvertence. This action deprived Herbalife of evidence that Peterman himself conceded was relevant and

12

delayed resolution of the case for two years, inconveniencing both Herbalife and the District Court. Peterman argues that the District Court erred in dismissing his case because "he had no reason to believe that he faced dismissal or any other sanction." Peterman contends that the District Court was required to warn him before dismissing his case. This argument is mistaken. As mentioned above, no such warning was required. *See id.*; M. R. Civ. P. 37(b)(2). Furthermore, the District Court's statement in response to Herbalife's initial motion to compel that sanctions were not appropriate cannot be interpreted as an assurance that Peterman would be insulated from sanctions for any subsequent failure to comply with discovery.

¶25 For the foregoing reasons, we affirm the District Court's dismissal of this case.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JIM RICE
/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON

13