DA 15-0529

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 196

FARMERS INSURANCE EXCHANGE,
TRUCK INSURANCE EXCHANGE, FIRE
INSURANCE EXCHANGE, MID-CENTURY
INSURANCE COMPANY, and FARMERS
NEW WORLD LIFE INSURANCE COMPANY,

      Plaintiffs, Counterdefendants and Appellants,

    v.

DAVID S. GOLDAN,

      Defendant, Counterclaimant and Appellee.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 10-651A
Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Mark D. Parker, Casey Heitz, Parker, Heitz & Cosgrove, PLLC, Billings,
          Montana

      For Appellee:

          John G. Taussig, III, Attorney at Law, Boulder, Colorado

          Sherine D. Fernando, Kasting, Kauffman & Mersen, P.C., Bozeman,
          Montana

                    Submitted on Briefs:  May 11, 2016

                          Decided:  August 16, 2016

Filed:

_____
                  Clerk

FILED

08/16/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0529

Justice Patricia Cotter delivered the Opinion of the Court.

¶1     Appellants[1] appeal the order of the Eighteenth Judicial District Court, Gallatin County, entering judgment on a jury verdict in favor of David Goldan in a breach of contract action. We restate the issues on appeal as follows:

> *1. Whether the District Court erred by denying Farmers' motion for judgment as a matter of law because Goldan failed to meet his burden of proving damages for loss of net profits;*
>
> *2. Whether the District Court erred in denying Farmers' motion for sanctions based on Goldan's alleged discovery violations;*
>
> *3. Whether the District Court erred in concluding that damages should not be limited to the three month notice period allowed in the contract for terminations without cause.*

¶2     We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     In August 1988, Goldan began working as an independent contractor insurance agent for Farmers. At that time, Farmers and Goldan entered into a standardized Agency Appointment Agreement (Agreement), which defined the parties' various rights and obligations.

¶4     Under the Agreement, Farmers was obligated to pay Goldan new business and service commissions on each policy he sold and serviced in accordance with Farmers' commission schedules. In return, Goldan was obligated to provide the facilities necessary to service policyholders and to service policyholders so as to advance their

---

[1] Appellants are affiliated insurance entities, and include: Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company, and Farmers New World Life Insurance Company. We refer to Appellants collectively as Farmers.

interests and those of Goldan and Farmers. The Agreement could be terminated in three ways: (1) on three months written notice for any reason; (2) on thirty days written notice if any provisions of the Agreement were breached; or (3) immediately for specified causes, including switching insureds to another carrier. If the Agreement was terminated, Farmers was obligated to pay "contract value" to Goldan.

¶5 Over his 21 years with Farmers, Goldan became a successful agent. In the five years immediately preceding his termination, he averaged over $150,000 per year in commission income. Goldan was considered a "career" agent by Farmers, and he planned to continue with Farmers for the rest of his career. For its part, Farmers agreed it almost never terminated an experienced agent without a reason.

¶6 Goldan's wife, Linda, assisted him with his business and she eventually became a Farmers' customer service representative. In the early 2000s, Linda started the Bozeman Independent Insurance Agency (Independent Agency) to sell insurance policies that Farmers did not offer. Goldan and the Independent Agency shared office space and other resources. Farmers' district manager approved the arrangement and Farmers' audited the operation to make sure Goldan was complying with the Agreement. Goldan and Linda eventually formed Goldan Agency, Inc., for tax purposes on the advice of their accountant. Goldan Agency did not sell insurance; rather, Goldan and Linda would deposit their respective commissions into a jointly owned account held by Goldan Agency and Goldan Agency would pay the various expenses of both Goldan and the Independent Agency.

¶7 In December 2009, Farmers terminated the Agreement immediately, alleging that Goldan was switching policies from Farmers to the Independent Agency's insurance carriers. Pursuant to the Agreement, Farmers paid Goldan the first installment of contract value it owed him. Prior to paying the second installment of contract value in June 2010, Farmers sued Goldan alleging that Goldan breached his contractual duties and fiduciary responsibilities under the Agreement by soliciting and servicing the insurance business of policyholders within a year of his termination. Farmers sought damages and declaratory relief for the partial contract value it paid Goldan. Goldan counterclaimed for breach of contract, alleging that Farmers terminated him without cause and seeking the remainder of the contract value and other damages for sums he "reasonably anticipated receiving as an agent for" Farmers.

¶8 During pretrial litigation, Farmers moved to compel Goldan's response to requests for production of financial information. After briefing by the parties and a hearing, the District Court ordered Goldan to produce financial records of Goldan Agency along with his and Linda's personal tax returns, which he did. In addition, Farmers filed a number of motions in limine regarding the calculation of damages. Farmers moved to bar admission of any evidence relating to gross commissions, arguing that the measure of damages required evidence of Goldan's expenses in order to calculate net lost profits, and seeking to limit Goldan's proof to those damages suffered during the three month notice period specified in the Agreement for terminations without cause. The District Court denied both motions reasoning that evidence of gross commissions is relevant to calculating damages, the question of Goldan's expenses could be subject to cross-

examination, and that limiting damages to the three month notice provision as a matter of law would be improper because calculating the amount of damages is a question of fact for the jury to determine.

¶9    A three-day trial was held in April 2015.  At the close of evidence, Farmers moved for judgment as a matter of law and to strike Goldan's damage claims because he had not presented evidence of his expenses.  The District Court noted that Farmers chose not to ask Goldan or Linda questions regarding expenses during trial and denied the motion reasoning that "the jury will be able to evaluate" the expenses argument.   The jury ruled in favor of Goldan on all issues.  It determined that Goldan had not breached the Agreement before or after Farmers' terminated him.  It determined further that Farmers had breached the Agreement by terminating Goldan and awarded him $759,740.45— which amounted to five years of the yearly average commissions Goldan had earned over the three years preceding his termination.

¶10   Farmers moved post-trial for judgment as a matter of law on the same questions on which it had sought judgment preverdict and in its motions in limine.  In the alternative, Farmers sought dispositive sanctions as to Goldan's damages projections because he had not produced documents showing his expenses.  The District Court denied the motion on the ground that Farmers had presented "no new legal theories in support of the Motion, but simply request the Court to reverse its prior rulings based on arguments already made."   The District Court entered judgment in Goldan's favor, which included the $759,740.45 jury award with post-judgment interest and $69,422.41 for the remaining contract value Farmers owed Goldan, plus $32,248.14 in prejudgment interest.  Farmers

paid the judgment's contract value portion in partial satisfaction of the judgment and appeals from the jury's damage award and judgment.

## STANDARDS OF REVIEW

¶11 Whether judgment as a matter of law should be granted or denied is a question of law that we review de novo. *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 18, 336 Mont. 105, 152 P.3d 727. Judgment as a matter of law may be granted only when there is a complete absence of any evidence which would justify submitting an issue to a jury. All such evidence and any legitimate inferences that might be drawn from the evidence must be considered in the light most favorable to the nonmoving party. *Johnson*, ¶ 13. Courts should exercise the greatest self-restraint in interfering with the constitutionally mandated processes of a jury decision; therefore, judgment as a matter of law is not proper if reasonable persons could differ regarding conclusions that could be drawn from the evidence. *Johnson*, ¶ 13.

¶12 We review a district court's ruling on a request for discovery sanctions for an abuse of discretion. *Peterman v. Herbalife Int'l, Inc.*, 2010 MT 142, ¶ 14, 356 Mont. 542, 234 P.3d 898. A district court abuses its discretion when it acts arbitrarily, without the employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *Menholt v. Dep't of Revenue*, 2009 MT 38, ¶ 6, 349 Mont. 239, 203 P.3d 792. The construction and interpretation of a contract is a question of law that we review for correctness. *Fenwick v. State*, 2016 MT 80, ¶ 11, 383 Mont. 151, 369 P.3d 1011.

## DISCUSSION

¶13 *Whether the District Court erred by denying Farmers' motion for judgment as a matter of law because Goldan failed to meet his burden of proving damages for loss of net profits.*

¶14 Farmers asserts that breach of contract damages are limited to net profits, not gross income, and that Goldan's claim for lost commissions amounts to a claim for gross income because it did not account for Goldan's expenses. Farmers contends that it was Goldan's burden to establish his net profits and that he did not meet this burden because he presented no evidence demonstrating his expenses. Farmers argues that the record establishes that Goldan had expenses in the five years since his termination. Furthermore, Farmers claims, Goldan was required to incur expenses under the Agreement because he was obligated to provide the facilities necessary to service policyholders. By not establishing his expenses, and therefore not establishing his net profits, Farmers claims that the jury's damage award puts Goldan in a better position than he would have occupied had there been no breach—a result that is contrary to Montana law.

¶15 Farmers next asserts that Goldan's argument that he was entitled to recover commissions without incurring expenses is unsupported because in the three years prior to his termination—which were the three years upon which his average commissions figure was based—Goldan's commissions steadily decreased. As such, Farmers claims, Goldan would have had to sell more policies in order to reach the three year average commissions figure, which would have required Goldan to have operating expenses. Finally, Farmers contends that Goldan's average commissions figure is speculative

because Goldan offered no evidence that his pre-termination commissions would have remained the same had he not been terminated.

¶16 Goldan counters by asserting that there was substantial credible evidence supporting the jury's damage award. Goldan argues that his proposed average commissions figure represented net commissions because Farmers would deduct Goldan's expenses from his gross commissions *prior to* depositing the commissions into Goldan's account. Goldan would then put his net commissions into the Goldan Agency account, and Goldan Agency would pay all the additional expenses of both Goldan and the Independent Agency. Goldan asserts that Goldan Agency continued paying these expenses following his termination; therefore, "[t]he jury could reasonably infer Goldan did not save on expenses as a result of the [Agreement] being terminated as those expenses continued to be paid by Goldan Agency." Goldan contends further that the majority of commissions Goldan received were renewal commissions which required no expenses other than those Farmers deducted. Moreover, Goldan asserts, Farmers had the opportunity at trial to dispute Goldan's calculation of damages and cross-examine him and Linda regarding expenses, but chose not to do so. In fact, Goldan alleges, Farmers argued that there were no damages resulting from their breach. Goldan accordingly claims that "[n]early all of [his] evidence concerning damages and expenses went substantially unrebutted."

¶17 Goldan next claims that because Farmers' termination of Goldan was wrongful, under Montana statute Goldan is "entitled to damages that compensate him for all the detriment proximately caused by Farmers' breach." Goldan argues that the average

commissions figure Goldan presented to the jury represents the amount of damages necessary to put him in the position he would have occupied had the Agreement not been breached, and it therefore reflects the amount necessary to compensate him for the detriment caused by Farmers' breach. Goldan argues further that he offered evidence explaining why his commissions declined during the three years prior to his termination and that that evidence created an inference that Goldan's commissions would have increased had Farmers not breached the Agreement. Finally, Goldan asserts that his damages were predictable and quantifiable and therefore not founded on speculation because they were based on renewal commissions that he was entitled to receive on the policies in force at the time of the breach. As such, Goldan contends, his damages were reasonably certain.

¶18 We have long held that "[f]uture damages need only be reasonably certain." *E.g.*, *Sletteland v. Roberts*, 2000 MT 382, ¶ 36, 304 Mont. 21, 16 P.3d 1062; *Martinell v. Montana Power Co.*, 268 Mont. 292, 324, 886 P.2d 421, 441 (1994); *Kerr v. Gibson's Prods. Co.*, 226 Mont. 69, 74, 733 P.2d 1292, 1295 (1987). Section 27-1-311, MCA, provides for damages arising from breach of contract and instructs that "the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment which was proximately caused thereby or in the ordinary course of things would be likely to result therefrom." Section 27-1-303, MCA, however, provides that "[a] person may not recover a greater amount in damages for the breach of an obligation than the person could have gained by the full performance of the obligation on both sides." As such, contract damages can properly be awarded "for a loss of net profits," but

9

such damages cannot be awarded "for a loss of anticipated gross income." *Lovely v. Burroughs Corp.*, 165 Mont. 209, 217, 527 P.2d 557, 562 (1974).

¶19   It is well established "that in order for the damages to be recovered, there must be proof of the extent and amount thereof." *Rigney v. Swingley*, 112 Mont. 104, 110, 113 P.2d 344, 347 (1941).  In reviewing the sufficiency of the proof of damages, our function "is to determine whether there is substantial credible evidence in the record to support the jury's verdict." *Murray v. Whitcraft*, 2012 MT 298, ¶ 7, 367 Mont. 364, 291 P.3d 587 (quoting *Lauman v. Lee*, 192 Mont. 84, 88-89, 626 P.2d 830, 833 (1981)) (internal quotations omitted).  "Substantial evidence is that which a reasonable mind may find adequate to support a conclusion."  *Murray*, ¶ 7.  In determining whether there is substantial evidence to support the jury's award of damages, "[w]e must view the evidence in a light most favorable to . . . the prevailing party below, and where the record presents conflicting evidence, resolved by the jury, this Court is precluded from disturbing the verdict." *Murray*, ¶ 7 (citations and internal quotations omitted).  "This rule is particularly applicable when the District Court has passed upon the sufficiency of the evidence on motion . . . and has upheld its sufficiency." *Lauman*, 192 Mont. at 89, 626 P.2d at 833 (citing *Strong v. Williams*, 154 Mont. 65, 68-69, 460 P.2d 90, 92 (1969)).

¶20   A review of the jury instructions demonstrates that the jury was properly instructed on the law regarding contract damages.  The jury was instructed that damages must be "supported by substantial evidence" and "clearly ascertainable in both their nature and origin."  The jury was instructed further that the measure of contract damages "is the amount which will compensate the party aggrieved for all the detriment which was

10

proximately caused thereby or in the ordinary course of things would be likely to result therefrom." Furthermore, the jury was instructed that "damages are the amount which will put the nonbreaching party in as good a position as if the contract had been performed."

¶21 Viewing the evidence in the light most favorable to Goldan, we conclude that substantial evidence supports the jury's award of damages. Goldan offered proof of the amount and extent of the commissions he had received in the three years prior to his termination and testified that "the vast majority of the commissions were renewal business." Goldan testified further that other than the expenses deducted by Farmers—for which his evidence regarding his average commissions accounted—he did not have expenses associated with receiving renewal commissions. Farmers did question Goldan briefly regarding his expenses, yet made a seemingly tactical decision not to pursue that line of questioning further. Moreover, Farmers spent little time addressing damages at trial and during its closing argument asserted that Goldan's "damages are nothing" because the Goldans were "getting along fine." The evidence presented "is that which a reasonable mind may find adequate to support" the jury's verdict. *Murray*, ¶ 7. Moreover, the jury—which was correctly instructed on measuring contract damages—resolved the conflicting damages evidence and this Court is therefore "precluded from disturbing the verdict." *Murray*, ¶ 7.

¶22 Accordingly, the District Court did not err by denying Farmers' motion for judgment as a matter of law on the question of damages.

¶23 *Whether the District Court erred in denying Farmers' motion for sanctions based on Goldan's alleged discovery violations.*

¶24 Farmers claims that it sought discovery regarding Goldan's post-termination activities and income and that Goldan refused to provide that information. Farmers therefore contends that Goldan should not have been allowed to seek future lost damages. Moreover, Farmers argues, the jury's damage award should be stricken because Goldan refused to produce evidence during discovery supporting the damages theory upon which he relied at trial—which Farmers claims is that he was unable to find other work after Farmers terminated the Agreement. Farmers therefore maintains that it was deprived of an opportunity to refute Goldan's damages theory at trial. Finally, Farmers asserts that it was Goldan's duty to supplement discovery by providing further financial information and that because Goldan did not do so, he should not have been allowed to use the non-disclosed information as evidence of damages at trial.

¶25 Goldan counters that he complied with Farmers' discovery requests and "produced all information he was required to produce and complied with all Court orders." The District Court made no finding that he failed to produce information he was required to produce. Goldan next claims that following Farmers' motion to compel discovery of certain financial information in March 2011, Farmers never again took issue with the information produced by Goldan until weeks before the April 2015 pretrial conference— and even then Farmers did so in "an attempt to limit his damages, not address discovery concerns." Finally, Goldan argues that "*none* of the five years' worth of financial information produced by Goldan was used by Farmers at trial, conceding its irrelevancy."

12

¶26 We have declared that discovery "enables courts and parties to determine the truth of a given matter so that cases may be resolved justly." *Peterman*, ¶ 17. As such, "when a party fails to obey an order to provide discovery, the district court may impose sanctions, including dismissal of the action." *Peterman*, ¶ 18. Although "[w]e have repeatedly articulated a low-tolerance approach toward discovery abuse," *Peterman*, ¶ 17, it is well established that "[d]istrict courts are better positioned than we are to evaluate the conduct and good faith of parties during discovery, and as such they enjoy considerable leeway in sanctioning discovery abuses." *Peterman*, ¶ 23 (citations omitted).

¶27 Farmers filed a motion to compel discovery in March 2011 in which it sought financial records for Goldan Agency from 2005-2010 and Goldan's personal income tax returns for the same five years. The District Court granted Farmers' motion at a hearing in December 2011 and compelled Goldan to produce financial records for Goldan Agency, as well as his and Linda's unredacted income tax statements. In granting the motion to compel, the court reasoned, "That should give enough information to establish the damages being claimed, any defenses to the damages claimed, and what routine business expenses affected the potential for net profits for both Mr. Goldan personally and what he ran through Goldan Agency, Inc. as his umbrella." Goldan complied with the District Court's order and produced the requested financial records in January 2012.

¶28 Although various motions regarding other discovery issues were made by both parties during the course of litigation, Farmers did not file any further motions to compel discovery of Goldan's or Goldan Agency's financial records in the ensuing four years

13

prior to trial. While Farmers argued in its motion in limine that the court should bar evidence at trial of gross commissions and asserted in its preverdict motion for judgment as a matter of law that Goldan had not cooperated during discovery and failed to produce relevant documents to demonstrate the damages he claimed, it did not request that the court take any action to compel Goldan's disclosure of those documents. In denying Farmers' motion in limine regarding gross commissions, the District Court stated:

> The tax returns [that Goldan had previously provided to Farmers] would provide general business expenses for those years in question and any other costs that have not been provided in any more detail than that can be subject to cross-examination if requested. Or if brought up and not produced, then [Farmers' counsel], I would expect that you could make an objection to information that hasn't been produced.

¶29 Prior to trial, Farmers filed an objection to any evidence of lost profit or business damages on the ground that Goldan had not supplemented his or Goldan Agency's financial records. At trial, the court did not rule on the objection because it concluded that it would not be able to determine whether the financial records were relevant or not "without hearing the testimony." The court opined further that Farmers' counsel should "feel free to revisit your objection as needed, but at this point, I don't know that I can make any kind of ruling contrary to what we've already done."

¶30 During Goldan's testimony, Farmers did not interpose any objections to Goldan's evidence or testimony regarding his damages, nor did it object to his testimony about how he had been unable to work in the five years since his termination. Farmers did object when Goldan offered testimony regarding his and Linda's shared expenses following his termination on the ground that Farmers had not been supplied with any of

that financial information, and this objection was sustained. Farmers' counsel briefly questioned Goldan about Goldan Agency's income but ultimately concluded that he was "going to reserve those questions for Linda Goldan." However, Farmers' counsel never questioned Linda about Goldan Agency's income. Farmers' counsel then questioned Goldan further about whether he was "going to provide any information at all on the expenses of the Goldan Agency that it took for [Goldan] to earn the commissions [he] earned during the years [he] was earning commissions," to which Goldan responded that he would rely on his counsel to make that determination.

¶31 In its post-verdict motion for judgment as a matter of law, Farmers requested that the court sanction Goldan for his alleged discovery abuses by entering judgment in favor of Farmers on the issue of damages. In denying Farmers' motion for judgment as a matter of law, the District Court noted that Farmers raised "the same arguments as those ruled on—and denied—by the Court in [Farmers'] pretrial and trial motions," and presented "no new legal theories in support of the Motion, but simply request the Court to reverse its prior rulings based on arguments already made." The District Court concluded that Farmers had "presented nothing which convinces this Court to re-assess its prior rulings."

¶32 The record demonstrates that Goldan produced the financial records the District Court ordered him to produce. The record demonstrates further that each time Goldan's alleged discovery abuses were brought to the District Court's attention, the District Court concluded that Farmers could cross-examine Goldan about his and Goldan Agency's expenses or object if and when such information was brought up. Farmers made a

15

seemingly tactical decision not to do so. Finally, although Farmers brought Goldan's alleged discovery abuses to the court's attention throughout the litigation, it never moved to compel Goldan's disclosure of any specific financial records beyond those that he produced. Goldan therefore did not "fail[ ] to obey an order to provide discovery." *Peterman*, ¶ 18. Furthermore, the District Court was "better positioned than we are to evaluate the conduct and good faith of [the] parties during discovery," and chose not to sanction Goldan—a decision concerning which we give district courts "considerable leeway." *Peterman*, ¶ 23. The District Court did not act arbitrarily or otherwise exceed the bounds of reason in denying Farmers' request for discovery sanctions.

¶33 Similarly, we are unpersuaded by Farmers' arguments that Goldan failed to fulfill his continuing duty to supplement discovery. M. R. Civ. P. 26(e)(1) concerns supplementing discovery, and provides:

> (1) In General. A party who has responded to an interrogatory, request for production, or request for admission must supplement or correct its response:
>
> (A) in a timely manner if the party learns that in some material respect the response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

In construing M. R. Civ. P. 26(e), we have concluded that "[i]nformation is 'incomplete or incorrect' in 'some material respect' if there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's discovery plan or trial preparation." *Wheaton v. Bradford*, 2013 MT

16

121, ¶ 22, 370 Mont. 93, 300 P.3d 1162 (citation and internal quotations omitted).  As such, M. R. Civ. P. 26(e) "serves to minimize the element of unfair surprise, thereby encouraging a trial on the merits.  Consequently, when no surprise arises from a violation of this rule, this Court has viewed the violation as hyper-technical." *Massman v. Helena*, 237 Mont. 234, 241, 773 P.2d 1206, 1210 (1989).

¶34     Although Farmers claims that it was "ambush[ed], plain and simple" when Goldan asked for damages amounting to five years' worth of commissions, the record demonstrates that Farmers could not have been unfairly surprised.  Farmers knew from the time Goldan filed his answer and counterclaim in July 2010 that he would be seeking damages for "all the benefits he received and reasonably anticipated receiving as an agent" for Farmers.  Farmers' March 2011 motion to compel and its July 2014 motions in limine demonstrate further that Farmers understood the basis of Goldan's damage claims—the average amount of commissions he would have received had the Agreement not been wrongly terminated.  We therefore conclude that Goldan's failure to provide additional financial information did not violate his duty to supplement the record because there was not "an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter [Farmers'] discovery plan or trial preparation." *Wheaton*, ¶ 22.  Moreover, Farmers did not object to Goldan's testimony regarding his damages at trial—even after the District Court explicitly advised that Farmers could object to any financial information that Goldan had not produced pertaining to his damages.

¶35 For the foregoing reasons, we conclude the District Court did not abuse its discretion in declining to impose discovery sanctions against Goldan. Accordingly, the District Court did not err in denying Farmers' motion for discovery sanctions based on Goldan's alleged discovery violations.

¶36 *Whether the District Court erred in concluding that damages should not be limited to the three month notice period allowed in the contract for terminations without cause.*

¶37 Farmers' final contention is that the jury's award of damages must be reversed to the extent that it exceeds three months of Goldan's lost profits. Farmers argues that, as a matter of law, Goldan's damages were limited by the Agreement's provision that he could be terminated without cause on three months' notice. Farmers urges this Court to adopt the rule that when an employment contract may be terminated on specified notice, the term for which the terminated employee is due compensation is the notice period. Farmers claims that because the Agreement could be terminated for any reason on three months' notice, Goldan could not have reasonably anticipated that his damages could exceed that notice period.

¶38 Farmers correctly asserts that the rule in the majority of jurisdictions is that "[w]here the employee is only guaranteed a specified time period to work after notice, the unexpired term for which compensation is due is the notice period." 3 Dan B. Dobbs, *Dobbs Law of Remedies: Damages-Equity-Restitution* § 12.21(2), 479 (Pract. Treatise Series, 2d. ed., 1993). However, given the manner in which Farmers terminated the Agreement and then pled its case, we decline Farmers' invitation to apply this rule here.

18

¶39 As noted above, the Agreement could be terminated in three distinct ways: (1) on 3 months' written notice for any reason; (2) on thirty days written notice if any of the provisions of the Agreement were breached; or (3) immediately for specified causes, including switching insureds to another carrier. Goldan's contract was terminated by Farmers immediately for cause, pursuant to (3), after which Farmers filed suit against Goldan seeking declaratory relief and damages for Goldan's alleged breach of contract. This in turn prompted Goldan to file a counter-claim in which he sought damages for Farmers' wrongful breach of contract. Notably, Farmers did not assert that it was entitled to apply the three months' provision so as to limit its damages until filing a motion in limine on the subject in July 2014, nearly five years after it terminated the Agreement with Goldan for cause and four years after it sued Goldan for damages.

¶40 Had Farmers initially given Goldan written notice that it was terminating the Agreement pursuant to (1) above, Farmers could have terminated the Agreement after three months and there would have been no breach of the Agreement or any entitlement to damages. We have upheld such a contract termination without cause when the requisite notice was given. *Tvedt v. Farmers Ins. Group of Cos.*, 2004 MT 125, ¶¶ 21, 29, 321 Mont. 263, 91 P.3d 1. Here, however, Farmers gave no such written notice and instead elected to terminate the contract for cause and pursue a claim for damages against Goldan. In *Tvedt*, we cited with approval our decision in *Farris v. Hutchinson*, 254 Mont. 334, 339, 838 P.2d 374, 377 (1992), in which we said: "In *Prout* [*Prout v. Sears, Roebuck & Co*, 236 Mont. 152, 772 P.2d 288 (1989)], we gave effect to the written agreements and said the employer could fire without cause under the agreements, but that

19

if it asserted the termination was for cause, the employee must have an opportunity to prove that the cause stated was false." *Tvedt*, ¶ 29. Because Farmers terminated the Agreement for cause and not on three months' written notice, Goldan had the right to prove that Farmers' stated cause was false. Just as Farmers sued him for damages, Goldan also had the right to assert a claim for his damages for breach of the contract, which he successfully did.

¶41 Section 27-1-311, MCA, provides that the measure of damages for a breach of contract is "the amount which will compensate the party aggrieved for all the detriment which was proximately caused thereby or in the ordinary course of things would be likely to result therefrom." A career agent with twenty-one years of successful employment with Farmers, Goldan established for the jury his understandable expectation that his contract would continue into the future, as well as the detriment caused by Farmers' breach of contract. We held in *Ehly v. Cady*, 212 Mont. 82, 97, 687 P.2d 687, 695, that contract damages are those that are reasonably foreseeable or within the contemplation of the parties at the time of entering the contract. At the time the contract was entered, it was reasonable for Goldan to assume that should Farmers give him three months' written notice of its intention to terminate the contract without cause, he would not be entitled to any damages. Conversely, it was reasonable for him to assume that should Farmers breach the contract by wrongly terminating it for cause, he would be entitled to rebut that cause and recover his full measure of damages resulting from the wrongful breach, as permitted under § 27-1-311, MCA.

¶42     The jury here listened to the evidence and concluded that Farmers breached the contract with Goldan, a finding which Farmers does not contest on appeal. The jury awarded damages accordingly, and in an amount supported by the evidence. While the extra-jurisdictional cases cited by the Dissent may indeed stand for the proposition stated, this is not at present the law in Montana, and we decline to adopt it under the circumstances and procedural posture of this case. Because Farmers unilaterally elected to sue Goldan for breach of contract and damages, we decline to limit its damages pursuant to a contract provision it did not invoke when it fired Goldan. We therefore conclude that the District Court did not err in concluding that Goldan's damages should not be limited to the three months' notice period set forth in the contract for terminations without cause on written notice.

## CONCLUSION

¶43     For the foregoing reasons, we affirm the District Court.


                                          /S/ PATRICIA COTTER

We Concur:

/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE


Justice Beth Baker, dissenting.

¶44     The disposition of this appeal turns on the written Agreement between the parties. Because the measure of damages for breach of that Agreement is a question of law that

21

the District Court resolved incorrectly, I dissent from the Court's decision to uphold the jury's damage award. I would instead reverse on the third issue and remand for the District Court to enter an amended judgment limiting Goldan to recovery of three months' worth of commissions. I would not address the other two issues.

¶45    Three points prove pivotal to proper analysis of the issue:

> 1. Farmers undisputedly breached the Agreement by terminating Goldan immediately without cause.
>
> 2. The Agreement could have been terminated on three months' notice for any reason, but Farmers did not terminate the Agreement under this provision.
>
> 3. Goldan sought damages for breach of contract only.[1]

Under these facts, the Court improperly determines that the measure of Goldan's contract damages exceeds what he could have recovered had the contract been performed.

¶46    First, the Court correctly observes that if one party breaches the contract, as Farmers did here, the measure of damages is "the amount which will compensate the party aggrieved for all the detriment which was proximately caused thereby or in the ordinary course of things would be likely to result therefrom." Opinion, ¶ 41; Section 27-1-311, MCA. Although the calculation of the amount of contract damages is a question of fact, *see, e.g.*, *Sack v. A.V. Design*, 211 Mont. 147, 153, 683 P.2d 1311, 1315 (1984), the measure of damages in a breach of contract action is a question of law,

---

[1] Goldan did not raise a claim for breach of the implied covenant of good faith and fair dealing in his Counterclaim. Although he attempted to raise the issue later in the proceedings, the District Court ruled that he had not done so properly by moving to amend his pleadings. The court advised the parties during the final pretrial conference that an implied covenant claim would not be allowed, and refused Goldan's proffered jury instructions relating to that theory of recovery. Goldan does not challenge the court's ruling.

*Arcadia Fin., Ltd. v. Prestige Toyota*, 1999 MT 273, ¶ 23, 296 Mont. 494, 989 P.2d 831 (observing that "[t]he measure of damages for a breach of contract is determined in accordance with § 27-1-311, MCA."). *See also McEwen v. MCR, LLC*, 2012 MT 319, ¶ 85, 368 Mont. 38, 291 P.3d 1253 (Nelson, J., concurring) (stating that "the choice of the proper measure of damages is a question of law for the court, while the calculation of the amount of damages is a question of fact for the fact-finder").

¶47     Second, the Court appears to recognize that this standard limits recoverable damages for breach of contract to those damages that are reasonably foreseeable or within the contemplation of the parties *at the time of contracting.*  Opinion, ¶ 41; *Ehly*, 212 Mont. at 97, 687 P.2d at 695 (concluding that "[o]ur court, and courts everywhere, recognize . . . recovery for consequential damages within the contemplation of the parties when they entered into the contract"); *Mont. Petroleum Tank Release Comp. Bd.*, 2008 MT 2, ¶ 71, 341 Mont. 33, 174 P.3d 948; *Hostetter v. Donlan*, 221 Mont. 380, 382, 719 P.2d 1243, 1245 (1986).  This application of the damages statute accords with the clearly stated rule that courts must interpret a contract so "as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."  Section 28-3-301, MCA.

¶48     Curiously, however, though it mentions § 27-1-303, MCA, in discussing Farmers' first contention an appeal (Opinion, ¶ 18), the Court is silent on the statute's application to the measure of damages.  "A person may not recover a greater amount in damages for the breach of an obligation than the person could have gained by the full performance of the obligation on both sides."  Section 27-1-303, MCA.  When a contract is breached,

23

"the nonbreaching party should receive a sum which will give that party an economic status identical to that which it would have enjoyed had the contract been performed." *Arcadia Fin., Ltd*, ¶ 23. *Accord Arrowhead Sch. Dist. No. 75 v. Klyap*, 2003 MT 294, ¶ 20, 318 Mont. 103, 70 P.3d 250 (noting that the nonbreaching party should receive "compensation equal to what that party would receive if the contract were performed"). "The [principle] espoused in § 27-1-303, MCA, supports the well-established 'benefit of the bargain rule.'" *Textana, Inc. v. Klabzuba Oil & Gas*, 2009 MT 401, ¶ 52, 353 Mont. 442, 222 P.3d 580 (citing *Castillo v. Franks*, 213 Mont. 232, 242, 690 P.2d 425, 430 (1984); § 27-1-311, MCA). Tied to that concept is the "fundamental tenet" of freedom of contract: "parties are free to mutually agree to terms governing their private conduct as long as those terms do not conflict with public laws." *Arrowhead Sch. Dist. No. 75*, ¶ 20. Among such permissible terms, parties are free to agree—as Farmers and Goldan did here—that their Agreement may be terminated for any reason upon the giving of specified notice. *Arrowhead Sch. Dist. No. 75*, ¶ 20.

¶49 The Court recognizes that most courts hold that when one party breaches a contract that may be terminated upon the giving of notice, the nonbreaching party's damages are limited to the notice period. Opinion, ¶ 38. The proposition is widely accepted. A representative sample of cases includes the following: *Odell v. Humble Oil & Refining Co.*, 201 F.2d 123, 128 (10th Cir. 1953) (concluding that although an employer breached an employment contract by firing employees for testifying against the employer in a criminal case, the employees' damages were limited to thirty days because "[w]here a contract of employment expressly empowers an employer to terminate the

24

contract upon giving notice, recovery for wrongful breach is limited to the notice period"); *Royal's Reconditioning Corp. v. Royal*, 689 N.E.2d 237, 241 (Ill. App. Ct. 1st Dist. 1997) (concluding that lost profit damages recoverable by employer for employee's breach of contract were limited to the notice period, in part, because the "parties did not contemplate several years' lost profits as damages because the contractual period for notice of termination was only 30 days"); *Hentze v. Unverfehrt*, 604 N.E.2d 536, 612 (Ill. App. Ct. 5th Dist. 1992) (concluding that trial court's award of nominal damages for breach of an indefinite dealership contract, which was terminable at will on sixty days' notice, was proper because "clearly five years of lost profits were not within the contemplation of the parties at the time of entering into the contract"); *Shivers v. John H. Harland Co.*, 423 S.E.2d 105, 106 (S.C. 1992) (concluding that "where a provision in a contract of employment allows the employer to terminate the contract for any reason upon giving fifteen days' notice, [and] the employer instead discharges the employee for cause under another provision of the contract without giving notice, and a jury finds that the discharge for cause is wrongful," the employee's recovery of damages was limited, as a matter of law, to the notice period even when the employee had been employed by the employer for over fourteen years,); *Burch v. Lake Forest Property Owners' Ass'n*, 565 So. 2d 611, 612 (Ala. 1990) (concluding that an employer's "violation of the notice provision does not entitle [the employee] to compensation for the entire contract period"); *Pharo Distributing Co. v. Stahl*, 782 S.W.2d 635, 638-39 (Ky. Ct. App. 1989) (concluding, "It is not the termination of an at-will contract that constitutes the breach; the right to terminate is inherent in the nature of the contract. . . . Rather, it is the failure

to give reasonable notice before termination that constitutes breach." Thus, the nonbreaching party's "damages may not reflect loss of a contract or discontinuance of the business relationship" when the breaching party breached an on-going distributorship contract.); *Martin v. U-Haul Co. of Fresno*, 204 Cal. App. 3d 396, 409 (Cal. App. 5th Dist. 1988) (concluding that a nonbreaching party's damages were limited to the notice period because "[p]arties who agree that a contract may be terminated for any reason, or no reason, upon the giving of the specified notice could not reasonably anticipate that damages could exceed that notice period").

¶50 But the Court fails to acknowledge that the rule applies equally in jurisdictions that, like Montana, limit contract damages to those that are reasonably foreseeable and are within the contemplation of the parties at the time of contracting. *See, e.g.*, *Martin*, 204 Cal. App. 3d at 408-09 (analyzing a California statute nearly identical to § 27-1-311, MCA); *Hentze*, 237 Ill. App. 3d at 612, (stating that the rule in Illinois is that "[r]ecovery of lost profits are allowable if . . . such profits were within the reasonable contemplation of the parties at the time the contract was entered"; therefore, for breach of a contract that could be terminated upon sixty days' written notice, "damages for lost profits exceeding these 60 days could not have been contemplated"); *Asamoah-Boadu v. State*, 328 S.W.3d 790, 796-97 (Mo. Ct. App. 2010) (concluding that damages for "lost profits must be limited to the termination period," in part because the rule in Missouri is that "[i]n an action for breach of contract, lost profits are recoverable where the loss is the natural and proximate result of the breach . . . and within the contemplation of the parties when the contract was made").

26

¶51 By emphasizing Farmers' admittedly wrongful termination without notice, the Court overlooks the fact that all of the above-cited cases are breach of contract cases. The longstanding principle they espouse is that "if a person refuses to perform a contract which is terminable by him upon certain conditions, the amount of money he would have to pay in exercising his election to terminate becomes the measure of damages for his breach." *Martin*, 204 Cal. App. 3d at 408. The same principle is recognized in the law of contracts and remedies. *See* 1 Robert L. Dunn, *Recovery of Damages for Lost Profits* § 6.19 530-31 (6th ed. 2005) (stating that where a contract may be terminated on specified notice but is terminated prematurely, "[m]ost of the cases limit damages recoverable to those suffered within the notice period"). Obviously, it applies only when "the manner in which [the contract is] terminated" does not meet the notice requirements. Opinion, ¶ 38.

¶52 It is of no consequence to the measure of damages that Farmers first invoked the agreed-upon limitation in a motion in limine. Opinion, ¶ 39. As the Agreement long had ceased to exist, the purpose of the motion was not to raise a late defense that the Agreement properly had been terminated without cause, but to assess a maximum limit on Goldan's recovery should he prove that Farmers' "with cause" termination breached the Agreement because the stated cause was false. Goldan undoubtedly had "the right . . . to seek damages for breach of the contract." Opinion, ¶ 40. But that statement alone does not answer the question before us.

¶53 A party to a contract generally has "the right to breach and pay damages rather than perform. The non-breaching party, theoretically, is 'made whole' from the damages

27

paid following the breach and thus still receives benefits from the agreement." *Rowland v. Klies*, 223 Mont. 360, 370, 726 P.2d 310, 317 (1986) (quoting *Nicholson v. United Pacific Ins. Co.*, 219 Mont. 32, 41, 710 P.2d 1342, 1348 (1985)). When a party breaches the contract, courts will award "compensation equal to what [the non-breaching] party would receive if the contract were performed . . . rather than additional damages intended to punish the breaching party for failure to perform the contract." *Arrowhead Sch. Dist. No. 75*, ¶ 20.

¶54 The Court's reliance on *Tvedt* misses the mark. Tvedt claimed that Farmers' termination of the contracts without good cause and on proper notice "constitut[ed] a breach of the covenant of good faith and fair dealing implicit in [the written contracts]." *Tvedt*, ¶ 20. The covenant arises not from the contract itself, but from the parties' justifiable expectations. *Rowland*, 223 Mont. at 370, 726 P.2d at 317 (citing *Nicholson*, 219 Mont. at 41, 710 P.2d at 1348). The Court fixates on the wrong question—whether the termination was "for cause" or "without cause" (Opinion, ¶ 40)—when there is no question that the Agreement was breached, and when the only issue is the measure of contract damages. In a common contract action, "tort-type damages are not available for breach of the implied covenant of good faith and fair dealing. They are, however, available for traditional contract-related torts such as fraud, fraudulent inducement, and tortious interference with a contract." *Story v. City of Bozeman*, 242 Mont. 436, 451, 791 P.2d 767, 776 (1990), *overruled in part*, *Arrowhead Sch. Dist. No. 75*, ¶ 54). Goldan sought none of these remedies. His damages are limited to contractual damages only. Section 27-1-303, MCA.

¶55 Had Farmers performed its Agreement, Goldan would have worked another three months following Farmers' notice and earned three months' worth of commissions from the business he produced. Upon termination, Goldan would be entitled to the "contract value" as defined by the Agreement.[2] By breaching the Agreement, Farmers now must put Goldan in as good a position as if it had performed: by paying him damages equivalent to the three months' worth of commissions he presumably would have earned with proper notice. The Court fails to honor the law's presumption that, when he signed the Agreement with Farmers, Goldan was "in the best position to make decisions in [his] own interest." *Arrowhead Sch. Dist. No. 75*, ¶ 20. For Goldan to recover future lost profits as contract damages, they must have been within his reasonable expectation at that time. *Ehly*, 212 Mont. at 97, 687 P.2d at 695. Additional damages, like those Goldan might have claimed in tort, are not implicated. The Court does not explain how Goldan's "full measure of damages resulting from [Farmers'] wrongful breach" (Opinion, ¶ 41) can be something other than Goldan's contractual expectation.

¶56 It is an understatement to characterize this analysis as the "majority" rule. Opinion, ¶ 38. Goldan cites but one case, *Chevrolet Motor Co. v. Gladding*, 42 F.2d 440 (4th Cir. 1930), to support his argument that damages may not be limited to the contractual notice period. *Gladding* involved a sales contract that contained three

---

[2] Under the Agreement, termination for any reason obligated Farmers to pay "contract value" to Goldan in installment payments. Contract value was based on the amount of service commissions paid to Goldan during either the six-month or twelve-month period preceding termination, the number of active policies Goldan held, and the number of years Goldan had been an agent for Farmers. Farmers' only "claim for damages against Goldan" (Opinion, ¶ 40) was to seek recovery of the portion of this contract value it already had paid him, on the theory that Goldan had breached the Agreement.

termination provisions, not one of which allowed termination at will, without cause. *Gladding*, 42 F.2d at 441-42. The contract construed in *Gladding* thus is materially different from the parties' Agreement here. *See Strategic Outsourcing, Inc. v. Cont'l Cas. Co.*, 274 Fed. Appx. 228, 234 (4th Cir. 2008) (concluding that the *Gladding* court's reasoning was "inapposite" because "the cancellation provision [in the contract at issue] did not require specific cause");[3] *Ford Motor Co. v. Kirkmeyer Motor Co.*, 65 F.2d 1001, 1004 (4th Cir. 1933) (concluding that "under the peculiar provisions of [the *Gladding*] contract . . . [the contract] might be terminated, not at will, but upon conditions specified in the contract"); *In re Petroleum Carriers Co.*, 121 F. Supp. 520, 526 (D. Minn. 1954) (distinguishing the *Gladding* contract "because [its] contract provision provided for termination upon the existence of specified conditions which were not met").

¶57    Unlike the *Gladding* contract, Farmers did not need to prove a specific condition in order to terminate the Agreement—it could be terminated without cause. The Fourth Circuit has not applied the rule it espoused in *Gladding* to contracts allowing termination without cause in the more than eighty years since. *See Strategic Outsourcing, Inc.*, 274 Fed. Appx. at 235; *Trimed, Inc. v. Sherwood Medical Co.*, 977 F.2d 885, 892 (4th Cir. 1992) (upholding a jury's damage calculation after concluding that the lower court properly instructed the jury that lost profits would be limited to those incurred during the six months following the breach of a contract that could be terminated "without cause at any time with six months' notice").

---

[3]  Fed. R. App. P. 32.1 allows citation to unpublished federal opinions issued on or after Jan. 1, 2007.

¶58 In summary, at the time of contracting, when he agreed to termination on three months' notice, Goldan could not reasonably have anticipated that he would receive five years' worth of lost profits. He instead is entitled to what he would have received had the Agreement been performed. *Arcadia Fin., Ltd*, ¶ 23. If Farmers had fully performed its obligation—that is, if Farmers had not breached the Agreement by terminating Goldan immediately without cause—it could have terminated the Agreement on three months' notice for any reason. Goldan therefore cannot recover a greater amount in damages than he could have recovered had Farmers terminated the Agreement with proper notice.

¶59 The Court does not explain why Montana should stand alone in refusing to enforce the expectations of the parties, except to protest that Farmers treated Goldan unfairly. Opinion, ¶ 42. That may be true. But it harkens a remedy in tort, which Goldan did not seek. The District Court should have, as a matter of law, limited Goldan's damages to the three-month notice period provided for in the termination clause. I would reverse the District Court's judgment on the jury's award of damages and remand to the District Court for further proceedings to re-calculate the amount of damages.

/S/ BETH BAKER